John Tenore

jtenore@perceptiveanalysis.com

PO Box 4274

Andover, MA 01810

(978) 697-6774

Plaintiff

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

Complaint for Copyright Infringement

COMPLAINT AND REQUEST FOR INJUNCTION

2:23-cv-01960-RSL

John Tenore, an individual,

                Plaintiff,

v.

David M. Long, an individual;

Craig E. Kinzer, an individual; and

Kelly E. Long, an individual,

                Defendants.

COMPLAINT FOR:

1. Copyright Infringement

**REQUEST FOR JURY TRIAL**

Plaintiff John Tenore alleges as follows:

## THE PARTIES

    1. Plaintiff JOHN TENORE ("Plaintiff") is a resident of Andover, Massachusetts.

    2. Defendant 1 David M. Long, with a primary residence at 21702 SE May Valley Rd, Issaquah, WA 98027.

3. Defendant 2 Craig E. Kinzer, last known residential address of 18884 42nd St, Issaquah, WA, 98027-9366 as of June 2022, and whose current business address is that of CBRE Group, Inc., 1420 5th Avenue, Suite 3800, Seattle, WA 98101.

4. Defendant 3 Kelly E. Long, with a primary residence at 21702 SE May Valley Rd, Issaquah, WA 98027.

## JURISDICTION AND VENUE

5. The court has original jurisdiction of this action under 28 U.S.C. §§ 1331 and 28 U.S.C. § 1338(a).

6. Venue in this district is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the within claims occurred in this judicial district. Venue in this district is also proper under 28 U.S.C. § 1400(b) in that it is a judicial district where Defendants 1 through 3 have committed acts of copyright infringement, Defendants 1 and 3 reside, and Defendants 1 and 2 have regular and established places of business.

## BACKGROUND FACTS

7. On or about March 15, 1990, Plaintiff created the designs for an original work of authorship known as the *Movie Memory* board game. The designs include imagery for the Movie Memory game board, front of box, back of box, player pieces, and labeling of game items. (altogether hereinafter referred to as the "SUBJECT WORK").

8. Plaintiff is the owner of a valid copyright for the SUBJECT WORK.

9. Plaintiff's copyright for the SUBJECT WORK has been federally registered.

10. On July 30, 1990, Plaintiff received United States copyright for the SUBJECT WORK, copyright registration number SRu000194001.

11. On or about May 1, 1990, Plaintiff completed the manufacture of approximately 2,000 copies of the SUBJECT WORK.

12. On or about August 15, 1990, through December 15, 1992, Plaintiff sold copies of the SUBJECT WORK through several retail stores in Massachusetts and Washington, directly to consumers at gift markets in Massachusetts and California, and indirectly to students at colleges and universities in Massachusetts and California.

13. Plaintiff is informed and believes that in the years between 1995 and 2000, Defendants 1 and 3 created a derivative work of the SUBJECT WORK and named the derivative work *Reel to Real*. (hereinafter referred to as "DERIVATIVE WORK 1").

14. DERIVATIVE WORK 1 includes game board artwork and box cover artwork that appear substantially similar to the game board artwork and box cover artwork of the SUBJECT WORK. (See Exhibit 1 included with this complaint).

15. Plaintiff is informed and believes that on or about September 1, 2019, DERIVATIVE WORK 1 was published at the Brian Sutton-Smith Library and Archives of Play at The Strong (hereinafter referred to as "The Strong") within the Museum of Play located at One Manhattan Square, Rochester, New York 14607.

16. Plaintiff is informed and believes that on or about June 15, 2000, Defendant 1 leveraged Derivative Work 1 to attract investment from Defendant 2 in Seattle, Washington for the purpose of commercializing Derivate Work 1 and/or to create a more technologically advanced derivative of Derivative Work 1.

17. Plaintiff is informed and believes that on or about January 15, 2001, Defendants 1 and 2 co-founded Screenlife, LLC in Seattle, Washington, establishing themselves as CEO and Chairman, respectively.

18. Screenlife, LLC has also been known as "ScreenLife", "Screen life", "Screenlife", "Screenlife Games, LLC", "Screenlife Inc.", "Screenlife LLC" and "Screenlife Games". (all forms and variations of which are referred to hereinafter as "Screenlife").

19. Plaintiff is informed and believes that Defendants 1 and 2 leveraged DERIVATIVE WORK 1 to raise $3 million in startup funds from investors to fund Screenlife operations and game development.

20. Plaintiff is informed and believes that on or about June 1, 2002, Screenlife published its first publicly available for sale game, naming it *Scene It?*.

21. Plaintiff is informed and believes that on or about October 21, 2004, Screenlife COO Dan Black estimated that Screenlife's published games had captured fifty percent of the $200 million market for DVD games.

22. Plaintiff is informed and believes that, between the years 2003 and 2007, Screenlife published numerous editions of *Scene It?*.

23. Plaintiff is informed and believes that, between the years 2003 and 2007, *Scene It?*, in all its editions, generated licensing revenue for Screenlife of $40 million to $50 million per year.

24. Plaintiff is informed and believes that, despite the reliance on DERIVATIVE WORK 1 to raise funding for Screenlife, and the tremendous market success of Screenlife products based on DERIVATIVE WORK 1, Defendants 1 through 3 never contacted Plaintiff to request permission or offer a share of licensing revenue, even though the SUBJECT WORK contributed significantly to the success of Screenlife and to the financial success of Defendants 1 through 3.

25. Plaintiff is informed and believes that on or about October 1, 2007, Screenlife was acquired by Paramount Pictures Corporation (a subsidiary of Viacom) for a purchase price of approximately $90 million, with Defendants 1 and 2 receiving approximately $50 million as a result of the acquisition.

26. Plaintiff is informed and believes that Defendant 2 held a majority share in Screenlife since the company's inception and through to its acquisition by Paramount Pictures Corporation.

27. Plaintiff is informed and believes that Defendant 1 held a large minority share in Screenlife since the company's inception and through to its acquisition by Paramount Pictures Corporation.

28. Plaintiff is informed and believes that, between the years 2003 and 2007, Defendants 1 and 2, as co-founders of Screenlife, combined to receive approximately $100 million from Screenlife via yearly compensation and lump-sum payouts resulting from the sale of the company.

29. Plaintiff is informed and believes that, in September 2019, Defendants 1 and 3 had published on their behalf a new derivative of the SUBJECT WORK entitled *Dave Long papers, Brian Sutton-Smith Library and Archives of Play at The Strong*. (Hereinafter referred to as "DERIVATIVE WORK 2").

30. In its publishing at The Strong, DERIVATIVE WORK 2 is described this way: "The Dave Long papers are a compilation of game design documentation, ephemera, and audiovisual materials from The Gamesters, Inc. and Screenlife, LLC, including information about the popular DVD game Scene It?."

31. DERIVATIVE WORK 2 indicates that Defendant 1 was the owner of The Gamesters, Inc.

32. DERIVATIVE WORK 2 includes images of the prototypes for DERIVATIVE WORK 1 and *Scene It?*.

33. Plaintiff had no knowledge of the copyright infringements involving DERIVATIVE WORK 1 and DERIVATIVE WORK 2 until August 14, 2023.

34. Plaintiff's lack of knowledge prior to August 14, 2023 regarding the existence of DERIVATIVE WORK 1 and DERIVATIVE WORK 2 was the result of DERIVATIVE WORK 1 and DERIVATIVE WORK 2 only being published as of September 2019, approximately 26 years after Plaintiff had ceased to work in the game industry.

35. Plaintiff ceased to work in the game industry as of 1993, the result of there being no pragmatic or cost-efficient mechanism for licensing movie clips' audio in the early 1990s, and thus, no mechanism for Plaintiff to affordably mass produce the SUBJECT WORK and market the SUBJECT WORK at a reasonable price.

36. Having not worked in the game industry for 26 years, Plaintiff did not discover until 2023, and only then by chance, the details of the infringing artwork found in DERIVATIVE WORK 1 and DERIVATIVE WORK 2.

**FIRST CLAIM FOR RELIEF**

**(For Copyright Infringement -- Against All Defendants)**

37. Plaintiff repeats, re-alleges, and incorporates by reference as though fully set forth herein, the allegations contained in paragraphs 1 through 36, inclusive, of this Complaint.

38. At all times relevant hereto, Plaintiff has been and still is the holder of the exclusive rights under the Copyright Act of 1976 (17 USC §§ 101 et seq.) ("Copyright Act"), and all amendments thereto to reproduce, distribute, or license the reproduction and distribution of the SUBJECT WORK shown in Exhibit 1 (sometimes hereinafter "Copyright" or "Plaintiff's Copyright").

39. The SUBJECT WORK is an original work created by Plaintiff; Plaintiff holds a copyright registration certificate from the United States Copyright Office for the SUBJECT WORK; and Plaintiff thereby owns the exclusive right and privilege to enforce its rights in such Copyright.

40. Plaintiff is informed and believes and thereupon alleges that Defendants gained access to the SUBJECT WORK to which Plaintiff is the owner of exclusive rights represented by the Copyright, and have created and published two derivatives of the SUBJECT WORK without Plaintiff's authorization for sale, license, and/or use in the United States and elsewhere.

41. Defendants have unlawfully leveraged for commercial use a derivative of the copyrighted SUBJECT WORK to which Plaintiff owns the exclusive rights under the Copyright.

42. Defendants have unlawfully leveraged DERIVATIVE WORK 1 to raise investment funding that enabled the operations of their company, Screenlife, as a result.

43. Defendants have infringed Plaintiff's exclusive rights in the SUBJECT WORK by publishing derivatives of the SUBJECT WORK.

44. Defendants have caused reputational damage to Plaintiff by publishing an incomplete history of the artwork that serves as the foundation of the game board play of the SUBJECT WORK, DERIVATIVE WORK 1, and DERIVATIVE WORK 2, omitting reference to the SUBJECT WORK as the origin of DERIVATIVE WORK 1, and thus, Screenlife.

45. Plaintiff has sustained, and will continue to sustain, substantial damage to the value of the SUBJECT WORK in that the previously described activities of Defendants have directly diminished and will continue to diminish the revenue which Plaintiff might otherwise receive if Plaintiff were to market for sale the SUBJECT WORK and/or Plaintiff's own future derivatives of the SUBJECT WORK.

46. Plaintiff has never authorized Defendants, by license or otherwise, to publish and/or use for any purpose a derivative of the SUBJECT WORK.

47. Plaintiff has never authorized Defendants, by license or otherwise, to create a derivative of the SUBJECT WORK for the purpose of attracting investors to their company or other projects.

48. Defendants have realized unlawful and unjust payments, and unlawful and unjust profits, from the unauthorized and illegal use of a derivative of the SUBJECT WORK. As such, Plaintiff is entitled to disgorgement of Defendant's payments and Defendant's profits directly and indirectly attributable to Defendant's infringement of the SUBJECT WORK in an amount to be established at trial.

49. Defendants have continued to infringe said Copyright in the SUBJECT WORK, and unless permanently enjoined by Order of this Court, will continue to infringe said Copyright, all to Plaintiff's irreparable injury.

50. Defendants have committed all of the aforesaid acts of infringement deliberately, willfully, intentionally, maliciously and oppressively, without regard to Plaintiff's proprietary rights.

51. Plaintiff is informed and believes and thereupon alleges that Defendants, and each of them, have acted with knowledge and/or reckless disregard of Plaintiff's rights such that their acts of copyright infringement as alleged above were, and continue to be, willful, intentional and malicious, subjecting Defendants, and each of them, to liability therefore.

## SECOND CLAIM FOR RELIEF

### (For Vicarious and/or Contributory Copyright Infringement – Against All Defendants)

52. Plaintiff repeats, re-alleges, and incorporates by reference as though fully set forth herein, the allegations contained in paragraphs 1 through 51, inclusive, of this Complaint.

53. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, knowingly induced, participated in, aided and abetted, and resultantly profited from the illegal creation and/or publication of derivative works based on the SUBJECT WORK as alleged herein.

54. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

55. By reason of the Defendants', and each of their, acts of contributory and/or vicarious infringement as alleged above, Plaintiff has suffered and will continue to suffer damage to the value of the SUBJECT WORK as well as reputational damage.

56. Due to Defendants' acts of contributory and/or vicarious copyright infringement, Defendants, and each of them, have obtained direct and indirect payments, and direct and indirect profits, they would otherwise not have realized but for their infringement of the SUBJECT WORK. As such, Plaintiff is entitled to disgorgement of Defendants' payments and profits directly and indirectly attributable to Defendants' infringement of the SUBJECT WORK Copyright in an amount to be established at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that this Court:

1. Conduct a jury trial to reach judgement on this matter of copyright infringement of the SUBJECT WORK by Defendants.
2. Enter judgment that Defendants have infringed upon Plaintiff's Copyright in its SUBJECT WORK.

3. Enter judgment that Defendants' use, publication, offering to license, or display of any of the derivative works of the SUBJECT WORK as set forth herein in paragraphs 1 through 56, inclusive, of this complaint constitutes an infringement of Plaintiff's Copyright.

4. Enter judgement that Defendants have infringed one or more of Plaintiff's exclusive rights in the copyrighted SUBJECT WORK, which includes the right to prepare derivative works.

5. Enjoin Defendants, and Defendants' officers, agents, employees, and those acting in concert or conspiracy with them, permanently from infringing or contributing to or participating in the

infringement by others of the SUBJECT WORK Copyright or acting in concert with, aiding and abetting others to infringe the said Copyright in any way.

6. Enter an injunction on Defendants to either remove the derivatives of the SUBJECT WORK from The Strong or modify the collection and derivatives of the SUBJECT WORK located at The Strong in a manner that fairly and justly credits Plaintiff and the SUBJECT WORK for their contribution to DERIVATIVE WORK 1 and Scene It?.

7. That Plaintiff be awarded an amount equal to all investment funds received by Defendants and Screenlife for the purpose of launching Screenlife's operations related to creating, producing, licensing, selling, or distributing the first Scene It? product.

8. That Plaintiff be awarded all profits of Defendants.

9. That Plaintiff be awarded all payments to Defendants.

10. That Plaintiff recover its attorney's fees and costs of suit incurred herein as available under the Copyright Act, 17 U.S.C. § 101 et seq.; and

11. That Plaintiff have such other and further relief as this Court deems just and proper.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: December 19, 2023

Signature of Plaintiff: *[signature]*

Printed name of Plaintiff: John Tenore

jtenore@perceptiveanalysis.com

PO Box 4274

Andover, MA 01810

Phone: (978) 697-6774

Plaintiff

# Exhibit 1

**Box cover of DERIVATIVE WORK 1**  **Box cover of the SUBJECT WORK**

 

**Game board of DERIVATIVE WORK 1**  **Game board of the SUBJECT WORK**

